## HENRY *v.* LAMENSDORF.

[83 South. 727, In Banc. No. 20969.]

BROKERS. *Employee of buyers who refused commission offer from seller's agent and acted for buyers not entitled to recover half of commission voluntarily paid their agent by sellers.*

Where the bookkeeper for buyers of a plantation did not accept the proposition of the agent for the sellers to act as sub-agent, but refused his offer to share commissions and elected to represent his employers in an effort to buy at a lower than the list price, negotiating direct with the sellers, and acting for the buyers without intimating either to the sellers' agent or the sellers that he was representing the latter, he is not entitled to recover from the sellers' agent half of the commissions voluntarily paid such agent by the sellers.

APPEAL from the chancery court of Yazoo county.

HON. LAMAR F. EASTERLING, Chancellor.

Suit by Sam Lamensdorf by next friend against Claude W. Henry. From a decree for complainant, defendant appeals.

The facts are fully stated in the opinion of the court.

*Barbour & Henry* and *Fulton Thompson,* for appellant.

*Barnett & Perrin,* for appellee.

STEVENS, J., delivered the opinion of the court.

Appellee, Sam Lamensdorf, as complainant in the court below, exhibited his bill in equity against appellant and also against Barbour and Coker, by which he seeks a discovery of the exact sum of money alleged to have been due as commissions for the sale of a certain plantation and a recovery of a portion of

said commissions. The prominent facts are that appellant, Claude M. Henry, was engaged in the business of a real estate broker and had a contract with Barbour and Coker, joint owners of Duck Pond plantation in Yazoo county, by the terms of which Henry was authorized to find a purchaser. Henry advertised the lands for sale in a newspaper, and this advertisement attracted the attention of appellee, Lamensdorf, of Gilmore, Ark. Appellee thereupon wrote Mr. Henry the following letter:

"Thompson & Richards, Planters and Ginners, Gilmore,
                        Arkansas.

"Mr. Claude Henry—Dear Sir; Saw your ad. in the Commercial Appeal and am of the impression that I could turn your deal for you at about eighty-five thousand dollars, for the whole place, implements, mules, corn and everything, less five per cent., or net it at eighty-two thousand, five hundred dollars, as I can get some good men interested in it, if you will give me a thirty-day option. Please let me hear from you by return mail and quote your best price.

"Yours truly,                    S. LAMENSDORF."

To this letter Mr. Henry replied as follows:

                "YAZOO City, Miss., Jan. 11, 1918.

"Mr. S. Lamensdorf, Gilmore, Arkansas—Dear Sir: Your favor of Jan. 9th with reference to Duck Pond plantation received.

"I am putting out a thirty-day option on this particular property. When your parties are ready to start, if you will advise me of that fact I will give them a five-day option to protect them in their inspection and negotiation here, unless five-day option has already been given to party inspecting.

"This is an exceedingly fine property, Mr. Lamensdorf, and we are not putting it into the market to be kicked around from pillar to post at an arbitrary price. In advance of a party getting on the ground and thor-

oughly acquainting himself with what we have the price is fifty dollars an acre for two thousand, five hundred acres, personal property included. If party does not care to inspect on that basis that is a matter immaterial to us.

"I will be glad to protect you in one-half the commissions I make on the deal if same is made by or through your agency. The listing is at one hundred thousand dollars net for the realty, and one hundred and ten thousand dollars for realty and personalty. Personally I seriously doubt that parties will take an amount appreciably less than that. In view of the fact that they cleared twenty thousand dollars this year they have good reason for not doing so.

"The property is well supplied with good, satisfied labor all signed up for the coming year. It has forty tenant houses, a Murray four-stand gin, a seven-room plantation home, five large barns, one store, an implement house, blacksmith shop, a pond covering an acre or more; a fine creek is on the eastern boundary. It is well drained naturally, and needs little attention in that respect. Its entire acreage is in the delta. It is beautifully located. The owners are doing fall plowing which will be charged to buyer.

"Interest your parties, and get them down here; they will be coming to look over a fine proposition.

"Yours very truly, [Signed] CLAUDE HENRY."

Appellee never at any time acknowledged the receipt of Mr. Henry's letter, and in no way advised Claude Henry that he, the appellee, would accept the proposition of sub-agency. On the contrary, Lamensdorf wrote the following letter direct to Duck Pond plantation:

"Planters and Ginners, Gilmore, Ark.

["Received about January 24 or 25, 1918.]

"Duck Pond Plantation, Valley Station, Miss.—Gentlemen: I am writing you to see the possibility of buying

and getting immediate possession of Duck Pond plantation.

"Now, I am writing you as I do not care to pay a real estate man thousands of dollars for an advertisement.

"We must have a place within the next ten days, before good weather sets in, and be on the place. Now we have an option on a good place, but we do not think it is large enough for us, and think that your place is about suitable.

"If you really want to sell and sell at once let me know at once by night letter your best price at my expense; also give me your best terms, as it all must be done at once, as I have no time to haggle over a price if it is suitable, and I think reasonable we can trade, but the first offer must be your best; also write me in a letter, location, amount of mules, feed as to hay and corn, houses, implements, barns, etc., and how many families you have contracted for the year.

"Now if you care to sell send me a sixty-day option by return mail, as it will insure us against loss by the time we are getting settled and our money matters straight and sell out up here.

"Write me, S. Lamensdorf, Gilmore, Ark.

"An immediate letter and telegram would probably put the deal through, as I have to confer with the men that are backing me and must have not less than sixty-day option to do so, although the decision will be reached in the next ten days, in fact by the 1st, and not later, so wire me by return mail at my expense your best terms and about the options.

"Yours truly,                S. LAMENSDORF."

At the time Mr. Lamensdorf wrote these letters he was the bookkeeper of Nicholson Bros., who subsequently became the purchasers. The testimony shows that Lamensdorf wrote direct to Duck Pond plantation at the instance and request of his employer, Mr. Nicholson;

that, in pursuance of the direct inquiry from appellee, Barbour and Coker sent appellee a telegram. Thereupon by a common understanding between Nicholson Bros. and appellee one of the Nicholsons came direct to Yazoo county and negotiated directly with Barbour and Coker, and subsequently closed the deal for the said property at a consideration of ninety thousand dollars. The property was listed with Agent Henry at one hundred and fifteen thousand dollars. When Nicholson came to Yazoo county personally to inspect the property he claimed to be acting for himself, and not through any agent whatever. He gave Barbour and Coker no intimation that Lamensdorf was an intermediary, and appellee himself at no time advised Barbour and Coker that he was acting as an agent until after the sale was made. After the negotiations were concluded appellee thereupon first demanded of Barbour and Coker his alleged commissions. He followed this demand up by also demanding of Agent Henry one-half of any commissions which Mr Henry was making out of the transaction. It appears that Mr. Claude Henry is closely related to Mr. Barbour, and after the deal was closed Barbour and Coker agreed to pay Claude Henry two thousand dollars, commissions and fifty dollars expenses. This amount of money they paid into court, and are no longer interested in the result of this litigation.

The chancellor awarded the complainant one-half of the two thousand dollars commission, and from this decree an appeal has been prosecuted, and any liability at all is challenged.

There is proof tending to show that Mr. Barbour asked Nicholson whether he learned of the property through Claude Henry and if he had had any negotiations with Claude Henry, and that Nicholson responded "that he had had no communication with Claude Henry as a real estate agent, or any other real estate agent, and stated that, if he had to deal through Claude Henry

or any other real estate agent, he would not look at it;''
furthermore, that Henry did not have the exclusive right
to handle the property, but that the owners had reserved
the right to negotiate a sale themselves.    The testi-
mony shows therefore, that the transaction was closed
without any knowledge or intimation that any agent
whatever had brought Nicholson to the owners or
that any agent would claim any commissions.

Appellee, as a witness in his own behalf, was asked
the following questions, and testified in response thereto
as follows on direct examination:

''Q. You were working for Nicholson Bros. when this
transaction was first instituted and when it was closed,
were you?  A. Yes, sir.

''Q. As a bookeeper?  A. Yes, sir.''

And on cross-examinaton:

''A. I wrote the first letter asking for an option at
the dictation of Mr. Nicholson, whom I worked for.

''Q. To get a reduction in price?  A. He said that he
didn't think he could pay that much for the place, and
wanted to get it as low as possible.

''Q. You say you were working for Nicholson?  A.
Yes, sir.

''Q. This was an arrangement of Nicholson to get
a reduction on the purchase price of Duck Pond?  A.
He was after getting the place as low as possible.''

The admissions of appellee are conclusive on the
proposition that he acted for the purchaser.    There
is some force in the argument that appellee brought
the purchaser to Barbour and Coker and effected the
sale that Agent Henry knew nothing of the negotia-
tions, and was not responsible for the consummation of
the trade; that, while Agent Henry may not have been
in position to enforce any legal claim for commissions,
yet, having received a commission of two thousand
dollars, by an amicable settlement with Barbour and
Coker, he has accepted the fruits of Lamensdorf's efforts.

We do not believe these considerations are controlling. The whole claim of appellee is bottomed upon an alleged subagency. The testimony shows conclusively that appellee did not accept Claude Henry's proposition to act as a sub-agent for Henry, but, on the contrary, repudiated Henry's offer and elected to represent Nicholson Bros. in an effort to buy the property at a price much lower than the list price. At the instance and request of Nicholson Bros., appellee negotiated direct with the owners, and in these negotiations he was not speaking and acting either for Henry or Barbour and Coker, but solely for and on behalf of the prospective purchasers. He never at any time intimated either to Henry or Barbour and Coker that he was representing the vendors. On the contrary, he conspired with Nicholson Bros. to buy the property at the lowest price possible. He manifestly elected to save for Nicholson Bros. a part of the price desired and fixed by the owners, and not to realize the full amount of the list price for the owners and take his *pro rata* share of the commissions. This being so, he did not in fact act as a sub-agent of Henry, but solely as the agent of the purchasers. On the law and facts, therefore, we conclude that the chancellor was clearly wrong, and that the decree appealed from should be reversed.

We are not to be understood as holding that a real estate broker cannot appoint a sub-agent to assist him in his work, or that a real estate broker, who is given no discretion by the vendor, may not sometimes act as agent for both vendor and purchaser. Such a case is not now presented. It appears affirmatively that Barbour and Coker originally listed the property with their agent at a much higher price than they ultimately received but reserving to themselves the right to make a sale. It furthermore affirmatively appears that they in fact negotiated with Nicholson in good faith without actual knowledge that anyone was claiming a commis-

sion.  Mr. Henry is a blood relative of Mr. Barbour one of the owners, and received two thousand dollars for his services in advertising and attempting to effectuate a sale and under circumstances that rendered his claim a doubtful legal demand.  It does not follow that, because Barbour and Coker have paid Henry a gratuity, appellee is entitled to recover.  He must recover upon the strength of his own demands.

The decree of the learned chancellor will be reversed, and a decree rendered here in favor of appellant.

*Reversed, and decree here.*